UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>IBS, INC. (a North Carolina Corp.), et al.,<br><br>Defendants,<br><br>KIMBERLYNN CREEK RANCH, INC.<br>(a California Corp.), et al.,<br><br>Relief Defendants. | Case No. 3:00cv103-V |

## CONSENT ORDER OF DISGORGEMENT AND OTHER EQUITABLE RELIEF AS TO RELIEF DEFENDANT PAMELA KINGSFIELD

Plaintiff Commodity Futures Trading Commission ("Commission") and Receiver William Walt Pettit, Esquire ("Receiver"), pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, having respectfully moved this Court to enter this Consent Order of Disgorgement and Other Equitable Relief Against Relief Defendant Pamela Kingsfield, and Relief Defendant Pamela Kingsfield ("Kingsfield") having signed her Consent to this Consent Order of Disgorgement and Other Equitable Relief, which Consent has been filed with the Court and is incorporated herein by reference, it appears to the Court that:

### I.
### INTRODUCTION

On March 13, 2000, the Commission filed a Complaint pursuant to the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (hereinafter "the Act") in the U. S. District Court for the Western District of North Carolina (hereinafter "the Court") alleging fraud in connection with the purchase or sale of commodity futures contracts and the sale of illegal off exchange commodity

futures contracts. Specifically, the Complaint alleges violations of Section 4(a) of the Act, 7 U.S.C. § 6(a), and that defendants IBS, Inc., Mazuma Trading Group, Inc. d/b/a Pinpoint Marketing Ltd., International Bullion Services (Bahamas), Ltd., Joe Miller Company d/b/a IMC Trading, Inc., IMC Trading, Inc., IMC Trading, Inc., IMC Trading, Inc., Alan Stein, Joseph Finateri, Samuel Kingsfield and Michael Temple (collectively the "Defendants") were liable for engaging in fraud in connection with the offer or sale of futures contracts in violation of Section 4b of the Act, 7 U.S.C. § 6b (the Court has previously made the findings of fact set forth below in holding that Defendants engaged in fraud in violation of the Act). The Complaint also seeks disgorgement of ill-gotten gains from a number of Relief Defendants, including Kingsfield.

## II.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint without a trial on the merits, Kingsfield hereby:

1. Consents to the entry of this *Consent Order of Disgorgement and Other Equitable Relief Against Relief Defendant Pamela Kingsfield* ("Order");

2. Affirms that she has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any person, to induce consent to this Order, other than as set forth specifically herein;

3. Admits that this Court has jurisdiction over her and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002);

4. Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1 (2002);

5.  Waives:

(a) all claims that she may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2000) and 28 U.S.C. § 2412 (2000);

(b) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

(c) all rights of appeal from this Order;

6.  Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order and for any other purposes relevant to this case;

7.  Agrees that neither Kingsfield nor her agents, employees or representatives acting under her control shall take any action or make any public statement denying, directly or indirectly, any allegations in the Complaint or creating or tending to create the impression that the Complaint is without factual basis; provided, however, that nothing in this provision shall affect Kingsfield's: i) testimonial obligations, or ii) right to take legal positions in other proceedings to which the Commission is not a party. Kingsfield will undertake all steps to assure that all of her agents, employees and representatives understand and comply with this agreement.

8.  By consenting to the entry of this Order, Kingsfield neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Order, except as to jurisdiction and venue. However, Kingsfield agrees and intends that the allegations of the Complaint and all of the Findings of Fact made by this Court and contained in Part III of this Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of any subsequent bankruptcy proceeding filed by, on behalf of, or against Kingsfield, or any proceeding to enforce this Order. Kingsfield shall provide immediate notice of any bankruptcy filed by, on behalf of, or against Kingfield in the manner required by Part

3

VI of this Order. No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Kingsfield or any other person in any other proceeding.

9. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact and ancillary equitable relief, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2002), as set forth herein.

## III.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. FINDINGS OF FACT

10. This Court has subject matter jurisdiction over this action and the allegations in the Complaint pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2002).

11. This Court has personal jurisdiction over Kingsfield pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2002).

12. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1(e) (2002), because Kingsfield resided in and transacted business in the Western District of North Carolina.

13. The **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2002), and the Regulations promulgated thereunder.

4

14.     **Pamela Kingsfield** ("Kingsfield") is a named Relief Defendant who currently resides at 8109 S. Kelso Valley Road, Weldon, CA 93283. Kingsfield has never been registered with the Commission in any capacity.

15.     The Court has previously made the following findings of fact in holding that Defendants engaged in fraud in violation of the Act:

(a)  Defendants contacted potential customers claiming profit potential through leveraged investments in precious metals and other commodities. Defendants employed a combination of statements in their solicitation including, (1) claims that customers had missed previous opportunities to profit on investments in commodities, and (2) claims that the market was poised for another profit-taking opportunity; and equity calls requiring further investment. In addition to these misrepresentations concerning profit potential, Defendants down-played risks, omitted information regarding the effect of commissions and fees associated with the offer and sale of commodity futures contracts to customers, and ultimately misappropriated customer funds.

(b)  Defendants' telemarketers regularly told potential customers on follow up calls that had the individual invested the last time the representative called, the individual could have already made substantial profits. The telemarketers claimed that prior profits ranged from 40 to 50-percent to as high as 75-percent. In addition, scripts of the sales pitches made by Defendants' representatives contained pattern statements that someone associated with the Defendants had called previously and that silver had risen substantially in the interim. For several years, Defendants' scripts claimed that the price of silver

5

rose from $4.30/oz to over $6.25/oz in 1995. Customers were told that they would have made a significant profit had they invested with Defendants in 1995. This claim was false, however, because the price of silver never fell as low as $4.30/oz and never increased as high as $6.25/oz in 1995. Therefore, no customers of Defendants could have purchased or sold silver at the prices claimed by Defendants' telemarketers.

(c) While claiming large profit potential, Defendants also down-played risks. To the extent risk disclosure statements were sent, it was only after the investment had been made. Defendants' customers were charged an administrative fee of four to five percent per transaction, a premium of $0.45 per ounce for precious metals, approximately $41 per month for storage of the metal, an interest rate as high as 10.25% on the loan through IBS, for total up-front premium fees of nearly 40-percent of a customer's initial investment making it virtually impossible to recoup the original investment let alone returning a profit. Prior to investing, customers were not told how commissions, loan interest, and administrative and storage fees would adversely effect the profitability of their investments. Defendants' claims to customers that metals and other commodities were being purchased and stored were false. Defendants have never produced any objective evidence that they purchased and stored precious metal or other commodities for customers. In fact, Defendants have never identified a single location where customer metal was stored.

(d) Defendants claimed to offer customers the ability to speculate on anticipated fluctuations in the price of commodities. Customers did not have the

6

expectation or ability to take delivery of any commodity subject to the alleged investment offered by Defendants. Further, Defendants did not expect customers to take delivery of any commodity. When a customer inquired about taking delivery, the Defendants strongly discouraged the customer from doing so. Defendants therefore engaged in the illegal offer and sale of futures contracts. Defendants' futures contracts were not sold on a contract market designated by the Commission. Further, the futures contracts offered and sold by Defendants to customers were not made on or subject to the rules of a board of trade, exchange, or market located outside the United States, its territories or possessions.

(e) Between October 1997 and November 1999, the Defendants deposited $7,748,038.86 of customer funds into its bank accounts. Of these customer funds, Defendants withdrew almost every dollar deposited. A significant portion of the funds withdrawn from Defendants' bank accounts were paid directly to individual Defendants and Relief Defendants, while other withdrawals were used to pay personal charges made by Defendants and Relief Defendants on corporate credit cards.

16.     Kingsfield received at least $175,000 in payments from the Defendants. Kingsfield did not provide any *bona fide* services in return for the $175,000 she received from the Defendants over the course of the Defendants' fraudulent conduct.

**B.     CONCLUSIONS OF LAW**

17.     In appropriate circumstances, the Commission may bring claims for relief against a nominal, or relief, defendant based solely on the premise that the particular defendant is in possession of property that is the subject of the litigation. *Commodity Futures Trading Commission*

v. *Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 193 (4th Cir. 2002). The theory underlying this common law concept is that in the interest of affording complete relief to an aggrieved plaintiff, a court may, in the interest of equity, exercise jurisdiction over relief defendants in possession of property that would ensure a plaintiff obtained the relief demanded, even though the relief defendant is otherwise unrelated to the underlying claim. *Id.* at 192. A court may order equitable relief against a relief defendant where the person or entity: "1) has received ill-gotten funds; and 2) does not have a legitimate claim to those funds. However, a claimed ownership interest must not only be recognized in law; it must also be valid in fact. Otherwise, individuals…holding funds on behalf of wrongdoers would be able to avoid disgorgement (and keep funds for themselves) simply by stating a claim of ownership, however specious." *Id.*

18. The evidence submitted herein has revealed an extensive list of facts which demonstrates the receipt of victims' money from various accounts held at Kimberlynn Creek Ranch, Inc. and Kingsfield Racing, Inc. to Relief Defendant Kingsfield.

19. As detailed in the affidavits and testimony submitted previously to this Court, Kingsfield received at least $175,000 from Defendants through Kimberlynn Creek Ranch, Inc. and Kingsfield Racing, Inc. during the period January 1998 to September 1999. Despite Kingfield's assertions that the money she received from Kimberlynn Creek Ranch, Inc. and Kingsfield Racing, Inc. constituted alleged wages due her from the Defendants, none of the payments to her were from the Kimberlynn Creek Ranch, Inc. or Kingsfield Racing, Inc. payroll accounts. It is clear from the evidence submitted that the payments to Kingsfield were paid out of accounts that were receptacles of customers' deposits.

20. Kingsfield received at least $175,000 from the Defendants without providing any *bona fide* services in return. Kingsfield therefore holds $175,000 in funds and assets in constructive trust for the benefit of the Defendants' customers.

## IV.

## ORDER FOR EQUITABLE RELIEF

**IT IS HEREBY ORDERED THAT:**

21. **PAYMENT OF DISGORGEMENT**: Relief Defendant Kingsfield is hereby ordered to disgorge $175,000, representing funds fraudulently obtained from customers as a result of the conduct alleged in the Complaint, and such disgorgement is due and owing ten days from the date of this Order, plus post-judgment interest at the interest rate set forth in 28 U.S.C. § 1961 ("Disgorgement Amount"). The Commission may enforce the Court's judgment for disgorgement and interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after ten days following entry of this Order.

22. **APPOINTMENT OF MONITOR**: The Court-appointed Receiver in this matter, William Walt Pettit, is hereby appointed as the Monitor for the receipt and distribution of the funds subject to this Order. Mr. Pettit shall be the Monitor for this action until the complete satisfaction of the Judgment of Disgorgement and the complete distribution of all funds paid or collected in satisfaction of this Judgment of Disgorgement are accomplished.

23. **COLLECTION OF DISGORGEMENT**: Relief Defendant Kingsfield shall make payments in satisfaction of this Order by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to "Court Appointed

Receiver, William Walt Pettit," upon the entry of this Order. All such payments shall be sent under a cover letter that identifies Kingsfield and the name and docket number of the proceeding.

24. **DISTRIBUTION OF DISGORGEMENT**: As Monitor, Mr. Pettit shall distribute disgorgement payments according to a list of known customers and calculation of each customer's known loss, as provided to the Monitor by the Commission. In addition, the Commission shall provide the Monitor with the last known address for each customer.

25. **MONITOR'S DISCRETION TO MAKE PARTIAL DISTRIBUTIONS**: In the event that this Order is only partially satisfied, the Monitor is authorized, in his sole discretion, to make one or more partial distributions. Any partial distribution shall be made on a *pro rata* basis to those customers who can be located at the time of the distribution

## VI.

## MISCELLANEOUS PROVISIONS

26. Notices: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

Director of Enforcement  
Commodity Futures Trading  
Commission  
1155 21st Street N.W.  
Washington, DC 20581

Timothy J. Mulreany  
Division of Enforcement  
Commodity Futures Trading  
Commission  
1155 21st Street N.W.  
Washington, DC 20581

Notice to Defendant Samuel Kingsfield and Relief Defendant Pamela Kingsfield:  
R. Lawrence Bonner, Esq.  
Homer & Bonner, P. A.  
1200 Four Seasons Tower  
1441 Brickell Avenue  
Miami, Florida 33131  
(305) 350-5100

10

Notice to Monitor:
    William Walt Pettit, Esquire
    Kellam & Pettit, P.A.
    2901 Coltgate Road Suite 102
    Charlotte, NC 28211
    (704) 442-9500 x 205

27. <u>Entire Agreement and Amendments</u>: This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

28. <u>Invalidation</u>: If any provision of this Order, or the application of any provisions or circumstances is held invalid, the remainder of the Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

29. <u>Waiver</u>: The failure of any party hereto or of any customer at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Order.

30. <u>Acknowledgements</u>: Upon being served with copies of this Order after entry by the Court, Kingsfield shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days.

31. <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action. Upon entry of this Order and full payment of all sums due in accordance with this Order, the asset freeze

against Relief Defendant Pamela Kingsfield shall be lifted.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Order of Disgorgement.

CONSENTED TO AND APPROVED BY:

*[signature]*
Pamela Kingsfield          Date: 9.20.2006

Approved for Entry:

*[signature]*
R. Lawrence Bonner, Esq.
Homer & Bonner, P. A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131             Date: 9.22.06
(305) 350-5100

*[signature]*
Timothy J. Mulreany, Chief Trial Attorney
Paul G. Hayeck, Associate Director
U. S. Commodity Futures Trading Commission

12

Date: 10-24-06

**SO ORDERED**, at Charlotte, NC on this 25 day of OCT 2006.

*[signature]*

**THE HONORABLE RICHARD L. VOORHEES**
**UNITED STATES DISTRICT JUDGE**

cc:    All Counsel of Record and Court Appointed Receiver

13